```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HERMINIO ESPINAL,              )
                               )
           Plaintiff,          )       9:06CV596
                               )
     v.                        )
                               )
NYS DEPARTMENT OF              )       MEMORANDUM OPINION
CORRECTIONAL SERVICES;         )
GLENN S. GOORD, Commissioner;  )
LESTER N. WRIGHT; J.T. SMITH;  )
DR. GREGOIRE; DR. GENOVESE,    )
                               )
           Defendants.         )
                               )
_____ )
```

This matter is before the Court on defendants' motion for summary judgment (Filing No. 44). Upon review of the motion, the memoranda and evidentiary submissions of the parties, and the applicable law, the Court finds that the motion should be granted with respect to plaintiff's federal claims.

## I.  INTRODUCTION

Plaintiff Herminio Espinal ("Espinal") is a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"). Espinal brings this action pursuant to 42 U.S.C. § 1983, alleging he received inadequate medical care while incarcerated at Five Points Correctional Facility ("Five Points") and Shawangunk Correctional Facility ("Shawangunk") from July of 2004 to the present, in violation of the Eighth Amendment. In addition, Espinal asserts a claim under Title II of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and a claim for negligence under New York state law.

## II. BACKGROUND

In November of 1974, Espinal was convicted of murder and sentenced to a term of imprisonment of twenty-five years to life (Filing No. 1, ¶ 10; Filing No. 44-6, ¶ 1). Espinal was subsequently placed in DOCS custody and has since resided in several different correctional facilities (Filing No. 1, ¶¶ 10, 13, 16, 19, 21).

In 1980, Espinal briefly escaped from DOCS custody (Filing No. 1, ¶ 11; Filing No. 44-6, ¶ 2). During his recapture, Espinal was shot in the spine (Filing No. 1, ¶ 11; Filing No. 44-6, ¶ 3). As a result of the spinal injury, Espinal is a paraplegic, confined to a wheelchair, and suffers from neuropathic pain syndrome (Filing No. 1, ¶ 12; Filing No. 44-6, ¶¶ 4-5).

According to Espinal, he suffers "excruciating and unbearable pain" due to his injuries (Filing No. 47, ¶ 5). Throughout Espinal's incarceration, the prison medical staff has prescribed a variety of medicines in an attempt to alleviate Espinal's pain (Filing No. 1, ¶¶ 13, 14, 16, 18; Filing No. 44-6, ¶ 6; Filing No. 44-4, exh. A). Espinal contends that the majority of these medications were ineffective, but his pain was effectively managed when he received both Valium and MS Contin

from June of 1995 to July of 2004 (Filing No. 1, ¶¶ 14-16, 18; Filing No. 47, ¶¶ 12-13).  Valium and MS Contin were recommended by specialists who examined Espinal from 1995 - 1998 (Filing No. 47, ¶¶ 10, 14-16, 19, exh. A at 13-16).  One of the specialists reported in March of 1996 that Espinal had "legitimate reason for pain" and responded best to MS Contin (Filing No. 47, exh. A at 15).  Espinal received Valium and MS Contin from 1995 until he was transferred from Shawangunk to Five Points on July 27, 2004 (Filing No. 47, ¶ 20).

Espinal was seen by defendant Dr. Gregoire at Five Points (Filing No. 1, ¶ 8).  According to medical records dated August 3, 2004, Dr. Gregoire determined Espinal was addicted to Valium and MS Contin, noted that in spite of complaints of pain Espinal was "animated in his conversation -- moving easily both in his bed and in wheelchair -- gesturing [] arms [and] head," and concluded that Espinal would be able to manage his pain without narcotics (Filing No. 44-3, ¶¶ 8-9; Filing No. 44-4, exh. A at 37-40).  Dr. Gregoire discontinued Espinal's prescription for Valium, tapered and then discontinued MS Contin, and gave Espinal alternative medications[1] (*Id.*).

---

[1] Espinal received Clonidine, Percogesic (a non-narcotic pain medication), Baclofen, and Neurontin (a medication used to treat neuropathic pain) (Filing No. 44-4, exh. A at 37-40; Filing No. 44-3, ¶ 8).

Subsequently, Espinal issued several complaints. Espinal complained that he lost bladder control once his prescription for Valium was discontinued (Filing No. 47, ¶ 31). Espinal was given a catheter and leg bag for his bladder condition (*Id.* at ¶ 33). In addition, Espinal complained of pain and often requested Valium and MS Contin (*Id.* at ¶¶ 29, 46; *see*, *e.g.*, Filing No. 44-4, exh. A at 31-32, 41, 44). Dr. Gregoire refused to prescribe Valium or MS Contin but continued to prescribe alternative medications, some of which Espinal voluntarily refused (*See* Filing No. 44-4, exh. A; Filing No. 44-3, ¶¶ 9-12, 14-15). Medical staff noted in Espinal's medical records that Espinal exhibited drug seeking behavior, maintained excellent hygiene and grooming despite complaints of pain, and was observed by medical staff sleeping through the night and engaged in activities without apparent pain (*See, e.g.*, Filing No. 44-4, exh. A at 30-33, 44; Filing No. 44-3, ¶¶ 9, 14).

Espinal was seen by the pain clinic in September of 2004 (Filing No. 44-4, exh. A at 41). The pain clinic recommended Espinal receive a Clonidine patch, which was ordered (*Id.*; Filing No. 44-3, ¶ 11). Espinal was again seen by the pain clinic in December of 2004 (Filing No. 44-4, exh. A at 45; Filing No. 44-3, ¶ 15). According to the medical records, the pain clinic recommended Clonidine pills, which Espinal refused, and stated there was no need for Espinal to return to the clinic

-4-

(*Id.*).  Espinal was seen by a physiatrist in July of 2005; the consultation note stated that "chronic narcotics in neuropathic pain are rarely if ever indicated."  (Filing No. 44-3, ¶ 16; Filing No. 44-4, exh. A at 48).

In September of 2005, Espinal was transferred to Shawangunk where Espinal was seen by defendant Dr. Genovese (Filing No. 1, ¶ 9; Filing No. 44-3, ¶ 17).  As of September of 2005, Espinal was receiving Neurontin (Filing No. 44-4, exh. A at 47; Filing No. 44-3, ¶ 18).  Espinal requested Valium and narcotics; Dr. Genovese reviewed the July 2005 physiatrist consultation note with Espinal and refused to prescribe Valium or narcotics (Filing No. 44-3, ¶¶ 17-19, Filing No. 44-4, exh. A at 48-49).  Dr. Genovese offered Espinal non-narcotic medications, which he declined (Filing No. 44-3, ¶ 19).

Espinal complained of pain on several occasions and requested Valium and morphine (MS Contin) (*See, e.g.*, Filing No. 44-4, exh. A at 3, 53, 61, 70).  Dr. Genovese refused to prescribe Valium and initially refused to prescribe MS Contin (MS Contin was later prescribed), but Dr. Genovese continued to prescribe alternative medications (*See* Filing No. 44-4, exh. A; *see* Filing No. 44-3, ¶¶ 22-25, 30).  Medical staff noted in Espinal's medical records that Espinal maintained good grooming, was observed engaged in activities without distress despite

complaints of pain, and exhibited drug seeking behavior (*See, e.g.*, Filing No. 44-4, exh. A at 11, 17, 53; Filing No. 44-3, ¶¶ 26, 33-34).

Espinal was seen by a neurologist in December of 2005 (Filing No. 44-3, ¶ 22; Filing No. 47, exh. A at 18). The neurologist recommended Espinal's existing prescriptions for Neurontin and Klonopin be increased and stated that if the increased medication did not help, to begin Nortriptyline and Valium (Filing No. 44-3, ¶ 22; Filing No. 47, exh. A at 18). Espinal did not want to take Nortriptyline (Filing No. 44-3, ¶ 22). Dr. Genovese ordered physical therapy for Espinal in October of 2006 (*Id.* at ¶ 27). Espinal was seen by a physiatrist in November of 2006 (*Id.* at ¶ 28). The physiatrist stated Klonopin, which Espinal received, is preferred to Valium for neuropathic pain and recommended MS Contin; MS Contin was prescribed in December of 2006 (*Id.* at ¶¶ 28-30). Espinal wanted a stronger dose of MS Contin than what was prescribed (*Id.* at ¶ 30). Espinal's MS Contin prescription was given cautiously because morphine is known to cause respiratory depression, and Espinal has severe emphysema[2] (*Id.* at ¶¶ 31, 33). As of August 30, 2007, Espinal continued to refuse non-narcotic medication and

---

[2] This lawsuit does not include any claims regarding Espinal's respitory condition (Filing No. 44-5, Espinal Depo., at 75-76).

sought higher drug doses (*Id.* at ¶¶ 34-35).  Dr. Genovese contends Espinal is receiving adequate treatment (*Id.* at ¶ 34).

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A fact is material when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

The Court must view the evidence in a light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor.  *See Matsushita Elec. Indus.*, 475 U.S. at 587.  However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a

genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In addition, because Espinal is a *pro se* litigant, the Court must construe Espinal's complaint and brief liberally, reading the submissions "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).

## IV. DISCUSSION

### A. Espinal's § 1983 Claim Relating to Inadequate Medical Treatment

Espinal claims the actions of defendants Goord, Wright, Smith, Gregoire, and Genovese "in formulating, instituting and implementing a policy of not prescribing appropriate narcotic medicines for the effective management of deliberate pain" constitute cruel and unusual punishment in violation of the Eighth Amendment (Filing No. 1, ¶ 27). Defendants Goord, Wright, and Smith contend they are entitled to summary judgment because they were not personally involved in any alleged constitutional violation, and all of the individual defendants contend Espinal's § 1983 claim should be dismissed because Espinal does not have a right to choose the proper course of treatment.

The Court finds Espinal's claim is deficient on the merits, and therefore, the Court does not address the issue of personal involvement.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  The standard of deliberate indifference includes a subjective prong and an objective prong.  *Id.*  "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'  Second, the defendant 'must act with a sufficiently culpable state of mind.'"  *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994))(internal citations omitted).  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Id.*(quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, Espinal has failed to offer sufficient evidence from which a reasonable jury could find the subjective prong is satisfied.  Espinal does not allege that defendants refused to prescribe medication for his pain.  Indeed, the medical records show that prison doctors prescribed Espinal a variety of medications in varying doses.  The gravamen of Espinal's claim is that defendants prescribed non-narcotic medication or mild medication (due to the type or dose of the medication) for

Espinal's pain when Espinal should have received stronger medication.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004), *aff'd*, 178 Fed. Appx. 39 (2d Cir. 2006)(unpublished)("The Eighth Amendment is not implicated by prisoners' complaints over the adequacy of the care they received when those claims amount to a disagreement over the appropriateness of a particular prescription plan."); *Whitcomb v. Todd*, No. 9:04-CV-223, 2008 WL 4104455, at *10 (N.D.N.Y. Sept. 3, 2008)(disagreements over medications is not an adequate ground for a § 1983 claim). Even conduct that constitutes medical malpractice does not give rise to an Eighth Amendment claim unless the malpractice involved culpable recklessness. *Chance*, 143 F.3d at 703.

The fact that prison doctors did not prescribe the type or amount of medication Espinal desired does not amount to subjective deliberate indifference. Espinal was seen by prison medical staff on several occasions and given medications recommended by the pain clinic and some of the specialists who examined Espinal. According to the medical records, stronger

medications were not prescribed for medical reasons. Specifically, prison doctors determined Espinal was addicted to Valium and MS Contin,[3] medical staff observed Espinal sleeping through the night and carrying out daily activities without apparent pain, both Dr. Gregoire and Dr. Genovese noted Espinal exhibited drug seeking behavior, and Dr. Genovese prescribed MS Contin in cautious amounts due to Espinal's respiratory condition.

       In an attempt to show that defendants' decision was the product of deliberate indifference rather than medical judgment, Espinal relies on defendants' Rule 7.1(a)(3) statements, wherein the defendants state that Dr. Gregoire informed Espinal that Dr. Gregoire could no longer prescribe MS Contin because of new DOCS policies concerning medication, and Dr. Genovese informed Espinal that MS Contin and Valium were no longer prescribed due to DOCS regulations (Filing No. 44-6, ¶¶ 8, 11).  Based on these statements, Espinal claims there is sufficient evidence to create a genuine dispute as to whether defendants' failure to prescribe stronger medication was the result of medical judgment or simple compliance with prison regulations indicating deliberate indifference.  The Court disagrees.  Foremost, there is no evidence regarding the content of these "policies and

---

[3] Espinal did not dispute this fact during his deposition (Filing No. 44-5, Espinal Depo., at 38-39, 52).

regulations." Moreover, these statements are not supported by the record before the Court. *See Shomo v. N.Y. Dep't. of Corr. Servs.*, No. 9:04-CV-0910, 2007 WL 2580509, at *2 (N.D.N.Y. Sept. 4, 2007)(". . . the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record . . ."). Defendants cite to the complaint as support for these statements, but there is no reference to these policies and regulations in the medical records, nor is there any dispute among the parties that Dr. Genovese did prescribe Espinal MS Contin. Defendants' 7.1(a)(3) statements do not create a genuine dispute of material fact.

Based on the foregoing, defendants Goord, Wright, Smith, Gregoire, and Genovese are entitled to summary judgment on Espinal's § 1983 claim.[4]

### B. *Espinal's Claim under Title II of the ADA*

Espinal claims he is unable to participate in program activities due to his pain, and DOCS's "policies" of not prescribing appropriate medication for Espinal's pain denies Espinal a reasonable accommodation in violation of the ADA. DOCS contends it is entitled to summary judgment because Espinal's

---

[4] To the extent Espinal's § 1983 claim is also asserted against DOCS, DOCS is entitled to summary judgment in accordance with the Court's discussion and on the basis of immunity under the Eleventh Amendment. *See Martin v. N.Y. State Dep't. of Corr. Servs.*, 224 F.Supp. 2d 434, 441 (N.D.N.Y. 2002).

claim is barred by the Eleventh Amendment, and Espinal has failed to prove DOCS acted with discriminatory animus towards Espinal's disability.  Aside from the constitutional issues raised by Espinal's claim, the Court finds the claim is deficient on the merits.

Title II of the ADA provides in part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to prisoners in correctional facilities.  *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998).

"To state a claim under Title II of the ADA, a prisoner must show that i) he or she is a qualified individual with a disability; ii) that was excluded from participation in, or denied the benefits of some service, program, or activity by reason of the disability; and iii) the entity providing the service, program, or activity is a public entity."  *Beckford v. Portuondo,* 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001).

Here, Espinal has not offered sufficient evidence that he was excluded from participation in activities by reason of his disability.  The medical records indicate Espinal was denied

stronger medication for medical reasons not associated with his disability, *see supra*. See *Shomo*, 2007 WL 2580509, at * 14 (". . . it is not a violation of the ADA to deny an inmate's request for reasonable accommodations because of a reason *other than his disability*."). Accordingly, DOCS's motion for summary judgment on Espinal's ADA claim will be granted.[5]

### C. Espinal's Negligence Claim

Espinal's state law negligence claim was asserted pursuant to the Court's supplemental jurisdiction. Because the Court has dismissed Espinal's federal claims, the Court declines to exercise jurisdiction over Espinal's state law claim, and it will be dismissed without prejudice.

### V. CONCLUSION

Summary judgment will be granted to all defendants on Espinal's § 1983 and ADA claims. Espinal's negligence claim will

---

[5] To the extent Espinal's ADA claim is also asserted against defendants other than DOCS, the remaining defendants are similarly entitled to summary judgment. To the extent the individual defendants are sued in their individual capacity, they are not liable under the ADA. *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). To the extent the individuals are sued in their official capacity, they are entitled to summary judgment in accordance with the Court's discussion.

be dismissed without prejudice.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 23rd day of March, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court